## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARRINGTON DAWES,                 :
                                  :
    Petitioner                :
                                  :
v.                                :          3:14-CV-00392
                                  :
ERIC HOLDER, et al.,              :          (Judge Nealon)
                                  :
    Respondents               :

FILED
SCRANTON
NOV 21 2014
PER _____
DEPUTY CLERK

### MEMORANDUM

Petitioner Barrington Dawes, a detainee of Immigration and Customs

Enforcement ("ICE"), has filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2241. He challenges his continued detention by ICE pending removal

from the United States. (Doc. 1). For the reasons set forth below, the petition will

be dismissed as premature.

## I.   Background

Dawes, a native and citizen of Jamaica, was deported from the United States

to Jamaica on May 21, 1990. (Doc. 5, Ex. 1). Thereafter, at an unknown date and

location, Dawes illegally reentered the United States. (Doc. 5, Ex. 4). On May 1,

2007, Dawes was arrested in New York City. Id. On May 7, 2007, a Decision to

Reinstate Prior Order was issued to Dawes, informing him to the intent to again

remove him from the United States. (Doc. 5, Ex. 5).

On June 13, 2008, Dawes was convicted of illegal re-entry after deportation, aggravated identify theft, and making false statements. (Doc. 5, Ex. 6, 7). Dawes was convicted of identity theft under the theory that he had obtained a birth certificate for Ivan Heyward and used that birth certificate to steal Mr. Heyward's identity and fraudulently obtain New York State benefits. (Doc. 5, Ex. 9). During the jury trial leading to his conviction, Dawes maintained that he was not Barrington Dawes, but was in fact Mr. Heyward. Id. Dawes maintained that he was Ivan Heyward despite the fact that Mr. Heyward and Mr. Heyward's father both testified at the trial. Id. On April 21, 2011, Dawes was sentenced to eighty-four (84) months imprisonment; his sentence expired on September 3, 2013. (Doc. 5, Ex. 7, 8). At that time, Dawes was transferred to ICE custody. (Doc. 1, Ex. C-1).

On March 3, 2014, Dawes filed a petition for writ of habeas corpus before this Court, seeking declaratory and injunctive relief to review the lawfulness of his detention, as ICE has been unable to obtain travel documents necessary for his deportation to Jamaica. (Doc. 1).

On April 1, 2014, despite having held Dawes in custody for more than six (6) months, the Office of Enforcement and Removal of the Department of Homeland Security ("OERO") determined that Dawes would remain in custody pending removal. (Doc. 5, Ex. 11). In the decision, OERO stated that it had

submitted a request for travel documents to the government of Jamaica, and that

the request was still pending. Id.

On May 29, 2014, Dawes was issued a formal Notice of Failure to Comply

Pursuant to 8 § CFR 241.4(g) ("Notice"). (Doc. 9, Attachment 1). The Notice

stated that:

> The Jamaican government has advised ICE that you have not been
> cooperative in their travel document verification process. Despite the
> fact that you have been convicted by a jury of Re-Entry after
> Deportation and Aggravated Identity Theft, you have told the
> Jamaican government that you have never been deported, never been
> to Jamaica, and that your name is Ivan Heyward, the identity you were
> convicted of stealing. You were served form I-229, Warning for
> Failure to Depart, you have not satisfactorily complied with the
> requirements set forth in that form. The burden to obtain a travel
> document for your removal does not solely rest with ICE. Pursuant to
> Section 241 (a)(1)(C) of the Immigration and Nationality Act (INA),
> you are required to make timely and good faith efforts to obtain travel
> or other documents necessary for your removal from the United
> States. If you fail to make these efforts, Section 241 (a)(1)(C) allows
> for the extension of the removal period. As you have failed to conduct
> the telephonic interview, you have thus failed to comply with your
> obligation and are acting to prevent your removal from the United
> States. The removal period is therefore extended in your case.

Id.

On June 24, 2014, ICE again issued a Decision to Continue Detention,

noting that the Jamaican government had not denied a travel document, and that

the request for travel documents was "still pending." (Doc. 10). Thereafter,

Dawes submitted a claim alleging a fear of returning to Jamaica. (Doc. 12). ICE

therefore delayed removal from the United States, and issued a Decision to

Continue Detention pending a ruling on the claim. Id. On October 27, 2014,

Immigration Judge Andrew R. Arthur issued an oral decision withdrawing Dawes'

request for withholding of removal. Id.

## II.  Discussion

Dawes presents two (2) primary arguments why his petition for writ of

habeas corpus should be granted. First, he contends that his detention is in

violation of established United Sates Supreme Court precedent. (Doc. 1). Second,

he argues that ICE has violated his procedural due process rights. Id.

### A. Petitioner's Custody is Not in Violation of Supreme Court Precedent

Under 8 U.S.C. § 1231(a), the Attorney General has ninety (90) days to

remove an alien from the United States after an order of removal, during which

time detention is mandatory. The ninety (90) day removal period begins to run,

inter alia, on the date the order of removal became administratively final. 8 U.S.C.

§ 1231(a)(1)(B). At the conclusion of the ninety (90) day period, the alien may be

held in continued detention or may be released under continued supervision. 8

U.S.C. §§ 1231(a)(3) and (6).

Section 1231(a)(6) does not permit indefinite detention, but "limits an

alien's post-removal-period detention to a period reasonably necessary to bring

about the alien's removal from the United States." Zadvydas v. Davis, 533 U.S.

678, 689 (2001). "[O]nce removal is no longer reasonably foreseeable, continued

detention is no longer authorized by statute." Id. at 701. In Zadvydas, the

Supreme Court determined that a six (6) month detention period is "presumptively

reasonable." Id. At the conclusion of the six (6) month period, if the individual is

able to provide "good reason to believe that there is no significant likelihood of

removal in the reasonably foreseeable future," the burden shifts to the government

to "respond with evidence sufficient to rebut that showing." Id.

1. *The Presumptively Reasonable Six Month Detention Period has not Run*

Here, Respondents initially conceded that the six-month presumptively-

reasonable detention period had passed, (doc. 5), but later learned from the

Jamaican government that Dawes was not being cooperative in obtaining travel

documents. (Doc. 9). As such, Respondents now contend that Dawes must remain

in ICE custody until he demonstrates that he is making reasonable efforts to

comply with the order of removal. Id.

Title 8 U.S.C § 1231(a)(1)(C), as amended, provides:

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

In such situations, the removal period may be extended until such time as the

petitioner begins to comply with the order of removal. See Barenboy v. Attorney

Gen. of U.S., 160 F.App'x 258, 261 (3d Cir. 2005). As such, continued detention is allowable so long as the petitioner refuses to cooperate in obtaining necessary travel documents. U.S. ex rel. Kovalev v. Ashcroft, 71 F.App'x 919, 924 (3d Cir. 2003). ("Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal.") (internal quotations omitted).

It is undisputed that Dawes has provided inconsistent information regarding his proper name, and has at least thirteen (13) known aliases. (Doc. 5, Ex. 4). During his trial in 2008, Dawes maintained that he was Ivan Heyward, despite testimony from the actual Ivan Heyward and Ivan Heyward's father to the contrary. (Doc. 5, Ex. 9). Dawes also denied his true identity despite being deported to Jamaica in 1990, and despite previously admitting to the Jamaican government that he is in fact Barrington Dawes.[1] (Doc. 5, Ex. 3).

Dawes has been served with Notices of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g). (Doc. 9). ICE has been informed by the Jamaican government that Dawes continued to assert, as late as May 29, 2014, that his name is Ivan Heyward, he has never been deported, and he has never been to Jamaica. Id. These facts establish that Dawes has acted to prevent his removal within the

---

[1] Much of the evidence used to prove Dawes' identity and citizenship was not included in the record before this Court. However, on appeal of the conviction, the United States Court of Appeals for the Second Circuit noted that "the proof of [Dawes'] alienage is overwhelming." United States v. Dawes, 495 F.App'x 117, 120 (2d Cir. 2012).

meaning of 8 U.S.C. § 1231(a)(1)(C) through May 29, 2014 at the earliest.[2]

Consequently, the presumptively reasonable six (6) month detainment period has

not passed and his habeas petition is premature.

>    2. *Dawes Has Not Demonstrated Good Reason to Believe There is No*
>       *Significant Likelihood of Removal in the Reasonably Foreseeable*
>       *Future*

Even assuming that the six (6) month presumptive period has passed, Dawes

has not sustained his burden of proof that there is "good reason to believe that there

is no significant likelihood of removal in the reasonably foreseeable future[.]"

Zadvydas, 533 U.S. at 681.

Dawes states in his petition that embassy officials for the government of

Jamaica have "refused to issue a travel document[]" and have informed him that

"[t]he Embassy will 'NOT' issue a travel document because they can not [sic] fully

establish his identity." (Doc. 1). While this may be true, any difficulty in

establishing Dawes' identity results from his own actions in representing to the

---

[2] It is not clear from the record whether Dawes has since begun cooperating with the Jamaican government in obtaining necessary travel documents. In the Decision to Continue Detention issued on June 24, 2014, ICE made no mention of Dawes' hindering efforts to obtain travel documents. (Doc. 10). On October 24, 2014, ICE issued another Decision to Continue Detention, noting that Dawes claimed a fear of returning to Jamaica. (Doc. 12). Even assuming that Dawes began cooperating immediately on May 29, 2014, the six (6) month reasonable period of detention will not pass until November 29, 2014. Therefore, it is not necessary at this time to determine when or if Dawes began cooperating in the effort to obtain necessary travel documents.

Jamaican government that he is Ivan Heyward, rather than Barrington Dawes. (Doc. 9).

Furthermore, contrary to Dawes' assertion, (doc. 1), the Jamaican government has not refused to issue travel documents. ICE has notified Dawes that, as of June 24, 2014, the request for travel documents was "still pending" and "has not [been] denied[.]" (Doc. 10). On October 24, 2014, ICE issued another Decision to Continue Detention, noting that Dawes claimed a fear of returning to Jamaica. (Doc. 12). Consequently, ICE suspended removal of Dawes pending a ruling on the claim. Id. Immigration Judge Arthur issued an oral decision on October 27, 2014, withdrawing Dawes' request for withholding of removal. Id. Therefore, ICE is now free to continue with removal proceedings with impediment. Other than his own conclusory statements, Dawes has provided no evidence that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and, as a result, he is not entitled to relief. Zadvydas, 533 U.S. at 681.

### B. Petitioner's Procedural Due Process Rights Have Not Been Violated

Although Dawes has failed to satisfy the requirements of Zadvydas, such failure "may not necessarily be fatal to [his] ability to prevail on an alternative ground predicated on regulatory non-compliance." Alexander v. Attorney Gen. of U.S., 495 F.App'x 274, 277 (3d Cir. 2012). Consequently, this Court must

consider Dawes' claim that ICE has violated its own regulations by failing to respond to his request for custody review under 8 C.F.R. § 241.13.  (Doc. 1).

Under 8 C.F.R. § 241.13, once an alien is placed in the custody of the Headquarters Post-Order Detention Unit ("HQPDU"), he or she may make a written request for release to the HQPDU, "asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1).  The individual must include information sufficient to establish that he or she has complied with the obligation to effect his removal and to cooperate in the process of obtaining necessary travel documents. 8 C.F.R. § 241.13(d)(2).

Within ten (10) business days of receipt of the request, the HQPDU must provide a written response acknowledging receipt of the request and explaining the procedures that will be used to evaluate the request.  8 C.F.R. § 241.13(e)(1).  The regulation further provides:

> HQPDU shall issue a written decision based on the administrative record, including any documentation provided by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances.  The HQPDU shall provide the decision to the alien, with a copy to counsel of record, by regular mail.

8 C.F.R. § 241.13(g).

Attached to Dawes' petition are two (2) documents purportedly sent to the HQPDU requesting a review pursuant to 8 C.F.R. § 241.13. (Doc. 1, Ex. D.). Dawes alleges that the HQPDU has not responded to either request. (Doc. 1). Respondents have not offered any reply to Dawes' contentions.

Even assuming that Dawes' properly mailed two (2) requests to the HQPDU, ICE did not violate his procedural due process rights by failing to reply as required by 8 C.F.R. § 241.13. The first request that Dawes sent to the HQPDU was dated "[b]etween December 21[,] 2013 [and] January 27[,] 2014." (Doc. 1, Ex. D). The second request sent to the HQPDU was dated February 10, 2014. Id. However, custody of Dawes was not transferred to the HQPDU until March 2, 2014, almost one (1) month after Dawes sent his second request for custody review. (Doc. 1, Ex. C). Consequently, Dawes was not in custody of the HQPDU at the time of his requests and the provisions of 8 C.F.R. § 241.13 were not applicable at the time. Therefore, Dawes' procedural due process rights were not violated.[3]

---

[3] Furthermore, the provisions of section 241.13 do not apply to individuals "subject to a final order of removal who are still within the removal period, including aliens whose removal period has been extended for failure to comply with the requirement of section 241 (a)(1)(C) of the Act." 8 C.F.R. § 241.13(b)(3)(iii). On May 29, 2014, Dawes was informed that, because he was not cooperating on obtaining necessary travel documents, the period of removal in his case was extended. (Doc. 9). Therefore, the provisions of section 241.13 do not apply to Dawes unless and until he begins cooperating in efforts of obtain necessary travel documents.

## IV.   <u>Conclusion</u>

A review of the record reveals that Dawes' petition for a writ of habeas corpus was filed prematurely and that his procedural due process rights have not been violated.  Consequently, his petition will be dismissed without prejudice.

A separate order will be issued.

Dated:  November 21, 2014                                       **United States District Judge**   .

11